ALBERT COLDWELL v. PHILO S. LANG.

February Term, 1933.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON, and GRAHAM, JJ.

Opinion filed May 2, 1933.

*Searles & Graves* for the defendant.

*Porter, Witters & Longmoore* for the plaintiff.

THOMPSON, J. This is an action of fraud in the sale of twenty-four cows and eleven calves by the defendant to the plaintiff on January 18, 1928, and for which the plaintiff paid $4,318. There was a trial by jury and a verdict and judgment for the plaintiff. The defendant excepted.

The sale was made at Lyndon, Vermont, where the defendant, a cattle buyer, lives. The plaintiff lives at Auburn, Massachusetts, a few miles from the city of Worcester. The cows purchased by the plaintiff had recently freshened, or were to freshen within a few months. They were purchased for the purpose of producing a high quality of milk, and they were satisfactory for that purpose at the time of the sale.

The material allegations in the complaint are that the animals were to be shipped by rail from Lyndon to Worcester; that at that time there was prevalent in Vermont and Massachusetts a certain communicable and infectious disease called hemorrhagic septicæmia, commonly known as shipping fever, to which cows were particularly susceptible during transportation by rail; that such disease, when once contracted, unless checked, spread rapidly from one cow to another, and frequently resulted fatally, and, in some cases in abortion and sterility; that there was then known to the veterinary medical profession a treatment of immunization known as the three section agressin treatment, which, when administered to cows, prevented their contracting such disease; that the defendant, by falsely and fraudulently warranting the cows to have been immunized by such treatment and to be immune to the disease, sold the cows and calves to the plaintiff; that, in fact, at the time of said warranty and sale, the cows had not been immunized by such agressin

treatment, and were not immune to the disease, all of which the defendant knew and of which the plaintiff was ignorant; that the plaintiff was induced by such false warranty to buy the cows and calves; that the animals were shipped by rail from Lyndon to Worcester on January 19, 1928; that on January 23, 1928, the cows, by reason of the lack of said immunization treatment, contracted hemorrhagic septicæmia which spread through their numbers, rendering them sick and unproductive and putting the plaintiff to great expense in the care and medical treatment of them; that, as a result of the disease, five of the cows aborted, six became sterile and could not be bred, two died, and the milk given by the surviving cows was unfit for use and was valueless; that the plaintiff lost great profits which otherwise he would have made, and he sustained great loss "in the depreciation and loss in value of the remaining cows due to such sickness, all occasioned as aforesaid."

That these allegations are supported by testimony, although it is contradicted, is not questioned by the defendant in this Court.

The defendant answered in bar of the plaintiff's action, that after the commission of the alleged grievances and wrongs in the declaration mentioned, and before the commencement of this suit, the Boston & Maine Railroad, hereafter called the railroad, paid, and the plaintiff accepted, $1,500 in full satisfaction and discharge of the said grievances and wrongs in the declaration mentioned, and on account of the damage to, and the death of, the identical cows purchased by the plaintiff, and that such settlement operates as a release of the defendant. The question is raised by appropriate exceptions to the overruling of the defendant's motions for a directed verdict and to set the verdict aside on the ground that such settlement with the railroad is a bar of this action.

The animals were shipped on a fast freight train from Lyndon on January 19, 1928. In the morning of January 20, which was a very cold day, the train, while traveling at a rapid rate of speed on the Boston & Maine Railroad, came to a sudden stop near Clinton Junction, about ten miles from Worcester, Massachusetts. The sudden stop caused a wooden partition in the car that separated the milch cows from the dry cows and the calves to be broken down, and the animals "were all piled up in one end of the car." Two or three cows sustained broken

ribs, four calves were killed, and all of the animals were bruised and some were otherwise injured.

The animals arrived at Worcester in the forenoon of January 20, and in the afternoon they were carried by truck to the plaintiff's farm in Auburn where they were placed in a cold cement barn. On January 24, some of the cows were sick with hemorrhagic septicæmia, and before February 10, 1928, all of the animals had contracted the disease. Between January 28 and February 10, inclusive, five cows and two calves died from the effects of injuries and the disease, two cows and two calves had been killed because of the disease, some of the cows aborted, and the milk from the surviving cows was not marketable.

·When the cows were unloaded at Worcester, the plaintiff notified a representative of the railroad that he was making a claim against it for the damages he sustained by reason of the sudden stopping of the train.

On February 10, 1928, the plaintiff, assisted by Mr. Graves, who was attorney for the defendant, prepared a formal written claim against the railroad. Mr. Graves had nothing to do with the settlement of the claim. After its preparation, all the negotiations with the railroad which resulted in the settlement, were carried on by plaintiff's attorneys, Mirick, Blackmer, Rugg & Whitcomb of Worcester. This claim was presented to the railroad by plaintiff's attorneys on March 29, 1928.

The first paragraph reads as follows:

> "To loss and damage on one car of cows and calves * * * * injured and subjected to exposure and loss of vitality with subsequent disease on account of extreme rough handling and negligent shaking up while in transit near Clinton Jct., as itemized below:"

Separate items follow for each of the animals that died or were killed. It is stated in each item that the animal died or was killed on account "of injuries, bruises and disease." There are three items for loss on cows on account "of injuries followed by abortion and disease," one item for loss on a cow on account of "rough handling and disease," and one item for the amount paid for the services of a veterinary. One of the last items is as follows: "To loss on balance of carload, 14

cows and 11 calves, due to rough handling, disease, debilitated condition and loss of sale value, $700.'' The total amount of damages claimed by the plaintiff was $2,587.03. It appears from the record that the disease referred to in the claim was hemorrhagic septicæmia.

On April 18, 1928, the plaintiff's attorneys wrote to the railroad as follows:

> ''Relative to the claim of Albert C. Coldwell, we are authorized in his behalf to accept the sum of $1,500 as settlement in full for any liability that you may be under as a result of his cattle being damaged in shipment from Lyndonville, Vermont, to Worcester.''

This letter contains the only statement of the terms of the settlement. On April 26, 1928, plaintiff's attorneys received a check for $1,500 from the railroad, which was accepted by the plaintiff.

■ The plaintiff concedes that the universal rule is that a release, discharge or satisfaction of one or more several joint tort-feasors, *i.e.,* where there is concert of action and unity of purpose, is a discharge of them all, since a party injured by a wrong committed by several can have but one satisfaction for his injury, no more than one who has a debt against several can be entitled to be more than once paid. *Sanderson* v. *Caldwell,* 2 Aikens 195, 202; *Brown* v. *March,* 7 Vt. 320, 327; *Eastman* v. *Grant,* 34 Vt. 387; *Chamberlin* v. *Murphy,* 41 Vt. 110, 118.

He contends, however, that the relation of joint tort-feasors did not exist between the defendant and the railroad; that his action against the plaintiff is for false warranty, while his claim against the railroad was of an entirely different nature without being concurrent or with concert of action; that the general rule is that acts of independent tort-feasors, each of which causes some damage, may not be combined to create a joint liability for damages.

■ Most of the cases cited by the plaintiff support his contention; but the authorities are not in harmony as to the circumstances under which independent tort-feasors may be joined in an action when their separate wrongful acts concur

in producing a single injury. The rule in this jurisdiction is stated in *Town of Sharon* v. *Anahama Realty Corp. et al.,* 97 Vt. 336, 338, 123 Atl. 192, as follows:

> "Whenever the separate and independent acts or negligence of several persons, by concurrence, produce a single and indivisible injury which would not have occurred without such concurrence, each is responsible for the entire result, and they may be sued jointly or severally, at the election of the party injured. In such cases, the act or neglect of each is a proximate and efficient cause, and when several proximate causes contribute to an injury, and each is an efficient cause, without the operation of which the injury would not have been caused, it may be attributed to any or all of such causes."

This rule is supported by *Wright* v. *Cooper et al.,* 1 Tyler 425; *Wilder* v. *Stanley,* 65 Vt. 145, 148, 26 Atl. 189, 20 L. R. A. 479; *Dufur* v. *Boston & Maine Railroad,* 74 Vt. 165, 171, 53 Atl. 1068; and *Drown* v. *New England Tel. & Tel. Co. et al.,* 80 Vt. 1, 66 Atl. 801.

It is not necessary to cite the many authorities that support this rule. The rule is stated differently in some of the cases, but the result is the same. In *Stone* v. *Dickinson,* 5 Allen (Mass.) 29, 81 A. D. 727, it is said that it is the fact that the separate acts of the independent tort-feasors "set on foot or put in motion the agency by which" the wrongful act is committed that renders them jointly liable. In *City of Valparaiso* v. *Moffitt,* 12 Ind. App. 250, 39 N. E. 919, 54 A. S. R. 522, it is said that where there is no concert of action or unity of purpose between tort-feasors, yet if their actions are concurrent as to time and place and unite in setting into operation a single destructive and dangerous force which produces an injury, they are severally and jointly liable. In *Van Troop* v. *Dew,* 150 Ark. 560, 234 S. W. 992, the court said that joint liability exists "where such separate acts of negligence are concurrent as to time and place, and which unite in setting in operation a single force which produces the injury." All the authorities agree that the separate acts must concur in causing a single

and indivisible injury. In Shearman & Redfield on Negligence (6th ed.), § 122, it is said, speaking of concurrent negligence as distinguished from joint negligence, that, unless the damage caused by the act of each independent tort-feasor is clearly separable, permitting the distinct assignment of responsibility to each, each is liable for the entire damage.

The plaintiff relies upon what this Court said in *Ames* v. *Dorset Marble Co. et al.,* 64 Vt. 10, 23 Atl. 857. That was a case in chancery where the independent acts of the defendants had united in choking the channel of the Battenkill so that its waters were thrown onto the plaintiff's land. The plaintiff sought an injunction against a continuance of the injurious conditions and an accounting of the damages already caused. It was said in the opinion of the Court that the defendants were not joint tort-feasors, in the sense that each was liable for all the damages occasioned to the plaintiff's land. The case is discussed and distinguished in the *Sharon* Case. If it were not distinguishable from that case and the other cases cited, it would be overruled by them.

The plaintiff also contends that the rule that a joint tort-feasor is released by the extinguishment of a claim against another joint tort-feasor finds application only where the person released and the person claiming the benefit of the release are jointly liable for the wrong. The contention is stated in the language of a head note in the case of *Brimer* v. *Scheibel,* 154 Tenn. 253, 290 S. W. 5, 6, 50 A. L. R. 1052, on which he relies. It is stated in that case that the law of that jurisdiction is as follows:

> "If two persons act independently in producing an injury, they are not joint tort-feasors, though both are guilty of conduct that constitutes the single injury, and they are not jointly liable for their combined acts and cannot be jointly sued. In such a situation acceptance of satisfaction from one in respect of his part of the wrongdoing would not discharge the others from liability for their respective shares in the transaction."

It is apparent from the statement of the law of that jurisdiction that it has not adopted the rule of this and other juris-

dictions that independent tort-feasors are joint tort-feasors when their separate acts concur in causing a single and indivisible injury, and that the term "joint tort-feasors" is used in the sense that there must be concert of action and unity of purpose.

In *Dufur* v. *Boston & Maine Railroad*, 75 Vt. 165, 53 Atl. 1068, 1070, where the separate acts of negligence of the defendant and one Allen concurred in causing the plaintiff's injury, it was held that the defendant and Allen were jointly and severally liable, and that a settlement by the plaintiff with Allen and a discharge of the cause of action against him operated as a release of the defendant. This Court said:

> "He (the plaintiff) elected to sue and settle with Allen, and he discharged the cause of action in express terms, which released both wrongdoers from further liability. The plaintiff could have only one satisfaction for his injuries."

The Court quoted at length from Jaggard on Torts, § 117, where it is said that the rule is that while separate suits may be brought against several defendants for a joint trespass, and while there may be a recovery against each, there can be but one satisfaction; that it is immaterial whether the satisfaction is obtained after judgment, or by amicable adjustment, without any litigation of the claim for damages; that the essential thing is the satisfaction; that the American cases recognize one satisfaction as a bar to suit against joint tort-feasors; that when the cause of action is once satisfied, it ceases to exist.

This Court went much further in *Robinson* v. *St. Johnsbury & Lake Champlain R. R. Co.*, 80 Vt. 129, 66 Atl. 814, 818, 9 L. R. A. (N. S.) 1249, 12 Ann. Cas. 1060. There, the plaintiff, an express messenger, who was injured by the negligence of the defendant, demanded compensation of the express company, and, in consideration of a sum paid, released it from every cause of action he had against it, and particularly from the claim on account of his injuries. The express company was a stranger to the accident, and was not liable to the plaintiff for the injuries he received. There was a contract between the express company and the defendant whereby it undertook to indemnify the defendant against such injuries sustained by its employees. The

defendant pleaded the release of the express company in bar of the action. It was held, after considering the trend of recent decision, that, as the payment was made on plaintiff's demand, in settlement of the cause of action, by one who was in fact an indemnitor of the defendant, who ratified the act of payment by pleading it, the plea was good.

The plaintiff says that in the *Dufur* and *Robinson* Cases, which are relied upon by the defendant, complete releases, *i.e.*, releases under seal, were given. That is true, but it does not affect the rights of the parties, because, as it is said in the *Robinson* Case: ''Cases of payment, accord and satisfaction, and release are all material to the inquiry, for all are cases of satisfaction in different forms. Payment is full satisfaction, an executed accord involves the acceptance of something as satisfaction, and a release is a conclusive acknowledgment of satisfaction.''

In the jurisdictions where it is held that independent tort-feasors, whose separate acts concur in causing a single and indivisible injury, are jointly and severally liable, they are generally called ''joint tort-feasors,'' although they are not strictly so; and it is also held, on the ground that the injured person is entitled to only one satisfaction for his injury, that a release to, or satisfaction from, one operates to discharge the other tort-feasor. *Muse* v. *DeVito,* 243 Mass. 384, 137 N. E. 730; *Cox* v. *Md. Elec. Rys. Co.,* 126 Md. 300, 95 Atl. 43; *Chicago Herald Co.* v. *Bryan,* 195 Mo. 574, 92 S. W. 902; *Cormier* v. *Worcester St. Ry. Co.,* 234 Mass. 193, 125 N. E. 549.

The gist of the plaintiff's action against the defendant is that cows that have not been immunized are particularly susceptible to hemorrhagic septicæmia while being transported by train; that by reason of the lack of the aggressin immunization treatment, because of the fraud of the defendant, the cows purchased of him were not immune, and they thereby contracted the disease with the resulting damage. His claim against the railroad for the damages resulting from the disease was that the animals contracted it because of their lowered resistance to it by reason of the injuries they received from the sudden stopping of the train and from exposure thereafter while in their injured condition.

There is evidence that cows that have not been immunized are particularly susceptible to hemorrhagic septicæmia while

being transported by train; that the resistance to the disease of animals that have not been immunized is lowered by a long journey; that, if the cows had been immunized by the aggressin treatment, they probably would not have contracted the disease even in their injured condition; that their resistance to the disease was lowered by reason of their injuries and exposure, and that such injuries and exposure caused them to be highly susceptible to the disease. There is also undisputed evidence that if the cows had not contracted the disease, they would have recovered from their injuries and would have been suitable for the purpose for which they were purchased.

While in most of the cases the separate acts that concurred in producing the single injury were acts of negligence, there seems to be no good reason why the rule should not apply to a case where the separate act of one of the tort-feasors was an intentional wrongful act and the act of the other was an act of negligence, if such acts united in setting in operation a single force that produced a single and indivisible injury. That the disease contracted by the cows was such an injury, in that the damage resulting from it cannot be apportioned, is apparent. It is impossible to ascertain how much of such damage was caused by the fraud of the defendant and how much was caused by the negligence of the railroad. We are unable to perceive how the plaintiff could claim to recover such damage from both the defendant and the railroad on any theory other than that the wrongful act of each concurred in causing it. We are of the opinion, and so hold, that the defendant and the railroad were jointly and severally liable to the plaintiff for the damages resulting from the disease; and that the settlement with the railroad operated to release the defendant, if it was a full discharge of the liability of the railroad.

The court below tried the case upon the theory that the plaintiff's settlement with the railroad did not bar his action against the defendant. That court also recognized the fact that the damage of the plaintiff resulting from the disease was indivisible and that the plaintiff was entitled to only one satisfaction, as it instructed the jury that, in assessing damages against the defendant, they should ascertain the total damages suffered by the plaintiff and then deduct from that amount the sum he received from the railroad. That is the rule of this Court for assessing damages when an injured party who has

received partial payment of his damages from one or more joint tort-feasors, brings suit against the others. *Chamberlin* v. *Murphy*, 41 Vt. 110. The plaintiff cites this case and other decisions of this Court as supporting the rulings of the court below.

It is the rule of this Court that where an injured person accepts partial payment from a joint tort-feasor, and releases the latter, but expressly reserves the right to proceed against the other joint tort-feasors, it will not operate as a discharge of the others, unless it appears that the payment made was in full satisfaction. *Spencer* v. *Williams*, 2 Vt. 209, 19 A. D. 711; *Eastman* v. *Grant*, 34 Vt. 387; *Chamberlin* v. *Murphy, supra; Sloan* v: *Herrick*, 49 Vt. 327; *Blackmer* v. *McCabe*, 86 Vt. 303, 85 Atl. 113. Such a transaction is, in effect, a covenant not to sue, which, the authorities agree, does not discharge the other joint tort-feasors. *Eastman* v. *Grant, supra*. It releases the one making the payment, but it does not discharge the cause of action. But these same cases hold that if the payment made is accepted in full satisfaction of the injury, it releases the other tort-feasors whose acts concurred in causing the injury.

It is true that the defendant was not liable for the calves that were killed and the physical injuries sustained by the other animals by the sudden stopping of the train. It fairly appears from the evidence that such damage alone could not possibly amount to the sum paid to the plaintiff by the railroad. It also appears that the railroad conceded that there was liability on its part for the disease contracted by the animals, and that liability was included in the settlement with the plaintiff.

In our disposition of the case, we confine our treatment of it to the liability of the defendant and that of the railroad for the damages resulting from the disease and the effect of the plaintiff's settlement with the railroad upon that liability.

The plaintiff's claim rested solely in damages. There was no criterion by which the amount could be definitely determined. It was a matter of estimation based on opinion and judgment. He made an estimate of the full amount of his damage, including that resulting from the disease, and made a claim upon the railroad for that amount. It appears that at that time and at the time of the settlement he did not claim that the defendant was liable for any of that damage. The railroad refused. to pay the full amount of the claim. It reasonably appears from

the record that if he had sued the railroad he probably could have collected a larger amount than he received in the settlement. Instead of suing the railroad, he, on the advice of his attorneys, elected to compromise, and he accepted $1,500 in full settlement of its liability. He did not reserve the right to proceed against the defendant, nor is there anything in the settlement to indicate that he accepted the $1,500 for anything less than full satisfaction for his injuries. The settlement operated as a discharge of the cause of action, *Eastman* v. *Grant, supra,* and it released the defendant. The court below erred in overruling the defendant's motion for a directed verdict.

*Judgment reversed, and judgment for the defendant to recover his costs.*