**Patricia B. Leo, et al. v. Donald F. Hillman, et al.**

[665 A.2d 572]

No. 93-621

Present: **Allen, C.J., Dooley, Morse and Johnson, JJ.**

Opinion Filed July 7, 1995

Motion for Reargument Denied August 9, 1995

*Richard H. Munzing* of *Weber, Perra & Wilson, P.C.*, Brattleboro, for Plantiffs-Appellants.

*Robert S. DiPalma* and *April Shafer Johnson* of *Paul, Frank & Collins, Inc.*, Burlington, for Defendants-Appellees.

**Allen, C.J.** Plaintiffs are family members of Judith Leo-Coneys, who was murdered by Francis Malinosky in 1979. They brought this action in 1992 against Dr. Donald F. Hillman and University Associates in Psychiatry, Inc. (UAIP), seeking damages for wrongful death and infliction of emotional distress, and for Judith Leo-Coneys's pain and suffering. Plaintiffs appeal from a summary judgment dismissing the wrongful death and emotional distress claims. Defendants Hillman and UAIP cross-appeal from the court's order denying summary judgment on the issues of a purported release in defendants' favor and survival claims on behalf of the victim. We affirm.

The complaint alleges that Judith Leo-Coneys had been involved in a romantic relationship with Francis Malinosky, which she ended in the summer of 1979. Malinosky became distraught and sought psychological treatment with defendant Hillman, a licensed psychologist employed by UAIP. Malinosky met with Hillman six times between September 4, 1979 and October 12, 1979, and in furtherance of the treatment, on October 18, 1979, Hillman met with both Malinosky and Leo-Coneys. That same evening Malinosky held Leo-Coneys at gunpoint until she agreed to reconcile with him. Leo-Coneys informed Hillman of the incident. On November 5, 1979, Leo-Coneys disappeared and was never seen alive again. Malinosky was considered a principal suspect and, about three weeks later, Malinosky also disappeared.

As trustee for the decedent, Patricia Leo filed suit against Malinosky in April 1980, alleging, inter alia, that he inflicted "great pain and suffering of body and mind, and on information and belief, the possible death of Judith Leo-Coneys." In September 1981, Leo, individually and as trustee for Leo-Coneys and guardian for Leo-Coneys's son, entered into a release agreement with Malinosky's

legal representative, under which she agreed to discharge Malinosky from all future claims.

In April 1990, Malinosky was apprehended in California, then extradited to Vermont to stand trial for the murder of Leo-Coneys. Later that year, Malinosky entered into a plea agreement and led authorities to Leo-Coneys's body. Thereafter, Malinosky filed a written statement with the Chittenden Superior Court stating that he had shot and killed Leo-Coneys on November 5, 1979.

Leo was appointed administrator for Leo-Coneys's estate in August 1992. Plaintiffs filed the present action against Hillman and UAIP in September 1992, alleging wrongful death, reckless and negligent infliction of emotional distress, and a survival action for pain and suffering. Plaintiffs asserted that Hillman knew Malinosky posed a serious threat to Leo-Coneys but discouraged her from reporting the gun incident of October 18, 1979 to the authorities. Plaintiffs also alleged that Hillman knew or should have known that Malinosky was dangerous, but did nothing to confront Malinosky or to protect Leo-Coneys.

Defendants Hillman and UAIP moved for summary judgment. The court granted the motion as to the claims of wrongful death and for infliction of emotional distress but denied it as to plaintiffs' survival claims. The present appeal and cross-appeal followed.

## I. Statute of Limitations Discovery Rule

Plaintiffs argue that the wrongful death claim is not barred under 14 V.S.A. § 1492(a), which states in relevant part that: "[s]uch action shall be brought in the name of the personal representative of such deceased person and commenced within two years from his decease . . . ." The statute is clear on its face and therefore requires no additional interpretation. *Burlington Elec. Dep't v. Vermont Dep't of Taxes*, 154 Vt. 332, 335–36, 576 A.2d 450, 452 (1990). Section 1492(a) prescribes a limitation period that is necessarily determinable where facts are known and indisputable. 14 V.S.A. § 1492(a). Accordingly, a claim for wrongful death must be commenced within two years of the date of decedent's death. Despite the apparent clarity of this reading, plaintiffs argue that the court should have read § 1492(a) to include a proviso that the cause of action does not accrue until discovery of deceased person's death, similar to the discovery proviso in 12 V.S.A. § 512(4), which provides that actions for personal injury shall be commenced within three years after the date of the discovery of the injury.

In *Cavanaugh v. Abbott Laboratories*, 145 Vt. 516, 526, 496 A.2d 154, 160 (1985), we overruled *Murray v. Allen*, 103 Vt. 373, 376, 154 A. 678, 679 (1931), which held that a cause of action in tort accrues at the time of the last negligent act attributable to the defendant. *Cavanaugh* held that the "term 'accrue' should be given a uniform meaning, regardless of when any particular cause of action actually arose," *id.* at 522, 496 A.2d at 158, and that a cause of action accrues on the date of discovery of the underlying injury. *Id.* at 526, 496 A.2d at 160. In *University of Vermont v. W.R. Grace & Co.*, 152 Vt. 287, 290, 565 A.2d 1354, 1357 (1989), we applied the discovery rule to the statute of limitation periods under 12 V.S.A. § 511, which are triggered by accrual of an action, but contain no explicit discovery rule.[1]

Plaintiffs incorrectly argue *Cavanaugh* and *W.R. Grace* require reading a discovery rule into every limitations provision within Vermont law. We did not hold in either *Cavanaugh* or *W.R. Grace* that every limitations statute must be construed in terms of when an action "accrues" — implying the need to ascertain a subsidiary fact in order to apply the limitations formula to a given provision. *Cavanaugh* said that the word "accrue" should be given a uniform meaning wherever it appears. *Cavanaugh*, 145 Vt. at 522, 496 A.2d at 158. Thus, the date of accrual could arise as an issue in any of the myriad of statutes in which the limitations period runs from the accrual date.[2]

■ The date of accrual in a wrongful death action under § 1492(a) is a determinable fact, and the statutory language, as in numerous

---

[1] 12 V.S.A. § 511 provides: "A civil action, except one brought upon the judgment or decree of a court of record of the United States or of this or some other state, and except as otherwise provided, shall be commenced within six years after the cause of action accrues and not thereafter."

[2] See, e.g., 7 V.S.A. § 501(d) (action for damages resulting from unlawful sale of liquor "shall be commenced within two years after the cause of action accrues, and not after"); 12 V.S.A. § 505 (action on covenants other than warranty or seisin "shall be brought within eight years after the cause of action accrues"); *id.* § 507 (action on specialties "shall be brought within eight years after the cause of action accrues"); *id.* § 508 (action on certain promissory notes "shall be commenced within fourteen years after the cause of action accrues"); *id.* § 513 (action for skiing injury "shall be commenced within one year after the cause of action accrues"); *id.* § 517 (action to recover taxes paid under protest "shall be commenced within one year after the cause of action accrues"); *id.* § 520 (action to recover wages "shall be brought within two years after the cause of action accrues").

other limitations provisions,[3] does not invite further inquiry. In sum, in construing a statute that bases the commencement of a limitations period upon a determinable fact and does not state or imply the need to determine accrual of an action extrinsically, we must apply its plain language and resist the temptation to adjust the law on the basis of specific cases. As the court stated in *Stiles v. Union Carbide Corp.*:

> In the absence of legislative definition and specification, the question when a cause of action accrues is a judicial one; courts are called upon to fashion general rules of accrual to effectuate the policy of repose underlying statutes of limitations without permitting unnecessary injustices. . . . Where, however, as in [the wrongful death statute of limitations], the Legislature has clearly and unequivocally prescribed that a cause of action accrues on the occurrence of a specified event, the courts are without power to fashion a different rule for determining when a cause of action accrues.

520 F. Supp. 865, 868 (S.D. Tex. 1981). Applying the same standard, we hold that § 1492(a) is clear on its face and neither states nor implies a discovery rule. The trial court's holding on this question is affirmed, and we have no occasion to consider the court's determination that plaintiffs' action was tardy even if a discovery rule were to be applied. A great majority of courts in other jurisdictions have interpreted wrongful death statutes similar to Vermont's in a manner consistent with today's holding. See, e.g., *Tennimon v. Bell Helicopter Textron, Inc.*, 823 F.2d 68, 72-73 (5th Cir. 1987) (applying Texas law); *Shover v. Cordis Corp.*, 574 N.E.2d 457, 459-60 (Ohio 1991);

---

[3] See, e.g., 12 V.S.A. § 504 (action on covenant of warranty "shall be brought only within eight years after a final decision against the title of the covenantor"); *id.* § 506 (actions on judgments "shall be brought within eight years after the rendition of the judgment"); *id.* § 515 (action for neglect of town clerk "shall be brought only within six years after a final decision based upon such neglect and adverse to the right, title or claim of the party under such deed, execution or instrument"); 15 V.S.A. § 302(b) (action to establish parentage "shall not be brought later than three years after the child reaches the age of majority"); *id.* § 515 (suit to annul marriage on ground of physical incapacity shall be brought within two years from solemnization of the marriage); 21 V.S.A. § 656 (proceeding for workers' compensation shall not be maintained unless employer is given notice of injury and "a claim for compensation with respect to an injury has been made within six months of the date of the injury; or in case of death, within six months after death"); and 23 V.S.A. § 1492 (damages to highways recoverable by state or municipal corporation "provided the action is brought within two years after such act is committed").

*Pobieglo v. Monsanto Co.*, 521 N.E.2d 728, 732–33 (Mass. 1988); *Ness v. St. Aloisius Hospital*, 301 N.W.2d 647, 652 (N.D. 1981).

Plaintiffs contend that none of the cases in which courts have declined to apply a discovery rule to limitations provisions in wrongful death actions involved decedent's bodies that were missing at the beginning of the stated limitations period. However appealing the argument for such an exception, the General Assembly has never chosen to import an accrual analysis into the limitations period applicable to wrongful death actions, though it has clearly been aware of tolling issues. See, e.g., 14 V.S.A. § 1492(a) (tolling the running of the statute while defendant is out of state); 12 V.S.A. § 518(a) (latent development injury claim must be brought within three years "after the person suffering the injury has knowledge or ought reasonably to have knowledge of having suffered the injury").

█ Plaintiffs also assert that "the Vermont wrongful death act incorporates the concept of accrual, because the word 'accrues' appears three times in 14 V.S.A. § 1492. All such references, however, are to defendants who are out of state when the wrongful death action accrues. Plaintiffs appear to give the word "accrues" talismanic value — if it appears in a statute, then a discovery rule is affixed to the statute. Defendants do not contend that a wrongful death action does not "accrue." They argue, and we agree, that § 1492(a) fixes the accrual date so that discovery can never be an issue.

Finally, plaintiffs argue that the personal representative and the chief beneficiary of the estate are, or should be, alter egos. They claim that under 12 V.S.A. § 551, the running of the limitations period in § 1492(a) is tolled as to the chief beneficiary of Leo-Coneys's estate, her son, who was and is still a minor. There is no logical or policy support for such a position.

█ Section 1492(a) is clear, however, that a wrongful death action be brought by the personal representative, not by the beneficiary of the estate. As we have already made clear, death — a determinable fact — signals the commencement of the limitations period under § 1492. The minority of the beneficiary of the estate does not bar the commencement of an action, nor should it provide the administrator with any grounds for postponing action.

A majority of states that require that a wrongful death action be brought in the name of the decedent's personal representative have held that the infancy of a beneficiary does not toll the running of

limitations periods. See, e.g., *Sandusky v. First Elec. Coop.*, 587 S.W.2d 37, 38 (Ark. 1979); *Arender v. Smith County Hosp.*, 431 So. 2d 491, 493–94 (Miss. 1983); *Wyatt v. Spartan Mill Co.*, 338 S.E.2d 341, 342 (S.C. 1985); *Huntington v. Samaritan Hosp.*, 680 P.2d 58, 59-50 (Wash. 1984).

## II. Emotional Distress Claims

■ Under Vermont law, the claims of the surviving plaintiffs for negligent infliction of emotional distress are available only if the plaintiffs were within the "zone of danger." See *Vaillancourt v. Medical Ctr. Hosp. of Vermont*, 139 Vt. 138, 143, 425 A.2d 92, 95 (1980) (husband outside zone of danger could not recover for emotional distress caused by allegedly negligent care of wife during childbirth that resulted in death of fetus); *Guilmette v. Alexander*, 128 Vt. 116, 117–19, 259 A.2d 12, 13–14 (1969) (mother outside zone of danger could not recover for pain and suffering caused when she witnessed motorist negligently strike her daughter, causing severe injuries). Plaintiffs concede that they were neither physically present within such a zone nor in fear for their own personal safety, but argue that Vermont should abandon the "zone of danger" test in favor of a test based on foreseeability. See, e.g., *Heldreth v. Marrs*, 425 S.E.2d 157, 167 (W. Va. 1992).

Plaintiffs misconstrue the holding in *Heldreth* and in other cases supporting abandonment of the zone of danger test.[4] In *Heldreth*, plaintiff husband, who was at a safe distance, witnessed defendant's automobile striking and seriously injuring plaintiff's wife. Defendant fled the scene and plaintiff gave chase on foot. Although plaintiff husband was never in the danger zone, the court stated that:

> a plaintiff's right to recover for the negligent infliction of emotional distress, after *witnessing* a person closely related to the plaintiff suffer critical injury or death as a result of defendant's negligent conduct, is premised upon the traditional negligence test of foreseeability. A plaintiff is required to prove under this test that his or her serious emotional distress was reasonably foreseeable, that the defendant's negligent conduct caused the victim to suffer critical injury or death, and that the plaintiff suffered serious emotional distress *as a direct result of witnessing* the victim's critical injury or death.

---

[4] See, e.g., *Sinn v. Burd*, 404 A.2d 672, 686 (Pa. 1979).

*Id.* at 169 (emphasis added). *Heldreth* demonstrates that this tort is still based on a plaintiff's actual witnessing of severe injury to a closely related person. At most, *Heldreth* and similar holdings eliminate the requirement that the plaintiff must have been a potential victim of the same negligent conduct that injured the closely related person. Therefore, *Heldreth* does not help plaintiffs, who are in essence requesting this Court to extend the tort of negligent infliction of emotional distress to any tortious conduct, witnessed or not, that causes emotional distress to a near relative of the direct victim. Such an action would arise as an ancillary claim in nearly every tort resulting in death or serious injury. We decline to adopt such a rule.

Plaintiffs also contend that the court erred in ruling that Vermont law requires that a plaintiff be present as a necessary element of reckless infliction of emotional distress. In cases where the alleged tortious conduct is directed at the plaintiff, physical presence is not a requirement. See *Thayer v. Herdt*, 155 Vt. 448, 455, 586 A.2d 1122, 1126 (1990) (complaint alleged that defendant chief of police, owing direct duty to plaintiff, failed to respond appropriately to abduction of plaintiff's daughter, causing emotional distress when daughter was raped and murdered); *Sheltra v. Smith*, 136 Vt. 472, 475–76, 392 A.2d 431, 433 (1978) (complaint asserted that defendant inflicted mental distress by preventing communication between plaintiff and plaintiff's daughter). Where reckless conduct is directed at a third person, presence is still required. As the Restatement (Second) of Torts § 46(2) (1965) states:

> Where [extreme and outrageous conduct] is directed at a third person, the actor is subject to liability if he intentionally or recklessly causes severe emotional distress
>
> (a) to a member of such person's immediate family *who is present at the time*, whether or not such distress results in bodily harm, or
>
> (b) to any other person *who is present at the time*, if such distress results in bodily harm.

(Emphasis added.)

■ Here, plaintiffs concede that defendant Hillman inflicted reckless conduct upon them, if at all, as third persons. They also acknowledge that they were not present at the time. Notwithstanding their absence, plaintiffs argue that these circumstances warrant an

exception to the rule. They rely on the Restatement authors' caveat, *id.*, and comment (l) to § 46(2), which appear to "leave open the possibility of situations in which presence at the time may not be required." *Id.* § 46(2) cmt. l. We decline to expand the well-established principles set forth in § 46(2) by not requiring presence in these circumstances. Because plaintiffs were neither present at the time the psychiatric services were rendered nor present at the time of Leo-Coneys's abduction or murder, there was no cause of action for reckless infliction of emotional distress.

## III. Survival Claims

On cross-appeal, defendants assert that the trial court erred in declining to conclude that plaintiffs' survival claims were barred by the applicable statute of limitations. The court disagreed, concluding that the matter was governed by 12 V.S.A. § 557(a) (Death of a party), which states:

> If a person, by or against whom an action may be brought, dies before the expiration of the time within which such action may be commenced as provided by this chapter or dies within thirty days after the expiration of such times, the period of limitation as to such action shall cease to operate at the date of his death. After the issuance of letters testamentary or of administration, such action, if the cause of action survives, may be commenced by or against the executor or administrator within two years, and not after.

The court found the case was timely filed under § 557, because plaintiff Leo was not appointed administratrix of Leo-Coneys's estate until August 1992.[5]

Defendants insist that Leo, who was appointed trustee of the estate under 14 V.S.A. § 2306 in 1980, was vested with the power to prosecute the rights of the decedent, was bound to do so under 12 V.S.A. § 512(4) within three years. But, there is no support for defendants' argument that the trustee appointment or the fact that plaintiff should have discovered Leo-Coneys's death, if true, should affect the result under 12 V.S.A. § 557(a).

---

[5] The statutes under which the survival action was brought also contemplate that the executor or administrator will be plaintiff in a survival action. See 14 V.S.A. §§ 1452–1453.

We have long held that the Legislature establishes statutes of limitation, and neither equity nor certainty would be fostered by reading exceptions into otherwise clear text in the name of desirable social policy. As we said of 12 V.S.A. § 558, in language equally applicable to 12 V.S.A. § 557(a), in *Leno v. Meunier*, 125 Vt. 30, 33, 209 A.2d 485, 489 (1965):

> We cannot engraft upon the statute exceptions, conditions or requirements under which the saving proviso shall become forfeited or inoperative. To do so would require something in the nature of a major operation upon the long standing work of the legislature. The court would be making the law instead of administering it. Thus, if a case falls within the letter of the statute, the court has no power to attach conditions to it.

See also *Estate of Harris v. Eichel*, 152 Vt. 180, 183, 565 A.2d 1281, 1283 (1988) ("While the policy to be espoused by such a reading might be laudable, it is not our province to read it into a clearly delineated Vermont statute reflecting a contrary policy.").

Defendants argue that, because plaintiffs were aware of the death of the decedent and of Malinosky's involvement long before the return of defendant Malinosky to the state, plaintiffs might have brought the present action long before letters of administration issued. Defendants demonstrate only that plaintiffs had options under our law — not that the power to sue at an earlier date nullified the right to do so at a later date. Moreover, even on the present facts, there would be numerous reasons why commencement of the action would have been more appropriate after Malinosky's return and clarification of the events leading up to the death of the decedent. But, the central legal point is that § 557(a) is written so that an executor or administrator need not guess when an action might be brought. That certainty is an important element of the cause of action. There was no error.

## IV. Release

In 1981, a legal representative of defendant Malinosky and plaintiff Leo, individually and as trustee for Leo-Coneys and guardian for her son, entered an agreement under which Leo agreed to discharge

Malinosky from all future claims.[6] Defendants argue that this release bars all claims against any defendants on the theory that a general release, without limitation, of one tortfeasor acts as a release of other tortfeasors. *Coldwell v. Lang*, 105 Vt. 359, 370, 166 A. 10, 14 (1933). Plaintiffs respond that the release signed by the parties was never intended to apply to Hillman and UAIP and does not discharge claims against them.

Much has changed in release jurisprudence since this Court decided *Coldwell* in 1933. Many states have abandoned the inflexible and often unjust results flowing from similar holdings. See, e.g., *Posey v. Medical Center-West, Inc.*, 354 S.E.2d 417, 417 (Ga. 1987); *Ohio Casualty Ins. Co. v. Ruschell*, 834 S.W.2d 166, 168 (Ky. 1992); *Morgan v. Cohen*, 523 A.2d 1003, 1009 (Md. 1987). The Restatement (Second) of Torts, reversing an earlier position, now states:

> A valid release of one tortfeasor from liability for a harm, given by the injured person, does not discharge others liable for the same harm, unless it is agreed that it will discharge them.

Restatement (Second) of Torts § 885(1) (1979). Under the revised Restatement, a release is treated as a contract and is to be interpreted in accordance with the intention of the parties. *Id.* § 885(1) cmt. c. Repudiation of the vestigial common law rule is consistent with the modern view of releases generally in Vermont — that a release is a contract and its scope is determined by the "intention of the parties as expressed in the terms of a particular instrument considered in the light of all facts and circumstances." *Economou v. Economou*, 136 Vt. 611, 619, 399 A.2d 496, 500 (1979).

■  Based on the principles set forth in the Restatement, the trial court concluded that the parties to the release never intended to release Hillman from any potential liability and that the clear intention of the agreement was to release only Malinosky from any civil liability arising from his conduct. The court ruled that plaintiffs' action against Hillman and UAIP is not barred by the release. The record strongly supports this conclusion. There was nothing in the understanding between Malinosky's representative and plaintiff Leo which indicated even the slightest consciousness of Hillman's interests or those of UAIP. The motivation for the release, presumably

---

[6] Because of our disposition of the wrongful death and emotional distress claims, the release is only relevant with respect to the survival action.

supported by adequate consideration, appears to have been strictly bilateral. There is nothing in the record to suggest that either Hillman or UAIP were aware of the negotiations between Malinosky's representative and Leo or that they sought to protect their interests in connection with that settlement. There was no error.

*Affirmed.*