# Nicholas Economou & Lorraine Economou v. Costas Economou a/k/a Costa Economou, Dorothy Economou and Economou Farms, Inc.

[399 A.2d 496]

No. 289-76

Present: Barney, C.J., Daley, J., Shangraw, C.J. (Retired), Specially Assigned, Smith, J. (Retired), Specially Assigned and Connarn, Dist. J., Specially Assigned

Opinion Filed January 19, 1979

Motion To Reconsider Appeal Denied February 20, 1979

*Nicholas* and *Lorraine Economou,* Huntington, pro se.

*Saul L. Agel* and *Saxer & Bennett,* Burlington, for Defendants.

**Daley, J.** This case is here for the second time. See *Economou* v. *Economou,* 133 Vt. 418, 340 A.2d 86 (1975). Upon remand, the cause was heard by the superior court, culminating

in judgment for the defendants. The defendants' counterclaim was denied. A protective injunction was issued in their behalf, and attachments upon certain properties in Shoreham and South Burlington, Vermont, were released. The plaintiffs appeal from the judgment, appearing pro se before us.

By motion to dismiss, for failure to comply with our rules of appellate procedure, the defendants seek to have us deny the plaintiffs' appeal. Although the printed case and briefs filed by the plaintiffs fall short of being in compliance with our procedural rules we will not dismiss their appeal. This controversy has continued unabated since 1947. Many matters that induced prior actions are revived here. Some are repetitious; others involve different legal claims. In the interest of judicial finality, we will review the cause. Accordingly, we suspend the rules pursuant to V.R.A.P. 2, and deny defendants' motion to dismiss.

This is basically a dispute between two brothers. The defendant, Costas, arrived in this country from Greece in 1926. By 1939, he had founded the C. Economou Cheese Corporation, which operates in Hinesburg, Vermont. The plaintiff, Nicholas, joined him here in 1947. From that time on, their relationship, financial and fraternal, has generated a multitude of controversies.

From 1947 through part of 1950, Nicholas worked for the C. Economou Cheese Corporation. In trial below, he claimed that a percentage of the corporation's profits in addition to unpaid salary were still due him.

In 1950, Nicholas acquired two farms in Shoreham, the "Lavoie" property and the "Brileya" property. Nicholas paid off the Brileya mortgage the same year. However, his stay on the farm was brief. In early 1952, he left Shoreham for Cuba. Costas, to protect funds which he had invested in the Lavoie farm, caused attachments to be placed on these properties. Upon Nicholas's return from Cuba, he engaged, with Costas's backing, in a cheese venture in Swanton, Vermont, which, after approximately three and one-half months, proved unsuccessful and was abandoned.

Disputes and differences arising out of Nicholas's verbal contract of employment with C. Economou Cheese Corpora-

tion, as well as to monies loaned and advanced by and to each of the brothers, continued unabated. These difficulties were resolved on May 21, 1954, when Nicholas executed a release to Costas and the corporation. At the same time, Nicholas executed a real estate mortgage to Costas in the sum of $15,692.98, and Costas released the previously mentioned attachments. During trial, Nicholas, personally and through his counsel, admitted that this release discharged any claims which he may have had against Costas or the corporation prior to its execution.

The controversies, however, persisted. In January, 1955, Nicholas entered into an agreement for the purchase of an 860-acre farm owned by Henry Wortheim, on Dorset Street in South Burlington. Ten days later, the brothers again attempted to resolve their differences by way of $10,000.00 demand note from the plaintiffs to Costas and a release given by Nicholas to Costas and C. Economou Cheese Corporation. This transaction was a part of negotiations for the formation of a corporation, known as Economou Farms, Inc., to operate the Shoreham and South Burlington properties. The negotiations resulted in a written agreement which, however, could not be produced by either party at trial. By the terms of the agreement, the brothers were to have equal shares of stock ownership. Nicholas was to manage, and Costas was to maintain the books. Nicholas would transfer his interest in the realty and personalty on the farms. He would be paid $50,000.00 for the real estate and personal property, which he would then contribute to the newly formed corporation. Costas would extend the credit of the C. Economou Cheese Corporation in the sum of $50,000.00.

In addition, Nicholas was to be paid $75.00 per week, and, in the event of any profits from the venture, the plaintiffs would be entitled to the first $5,000.00 of annual profits. Nicholas in turn gave a release to Costas and to the C. Economou Cheese Corporation of all claims based upon his employment with them. As part of the agreement, the defendants cancelled a note for $10,000.00 which the plaintiffs had given them on January 13, 1955. The agreement also called for the new corporation to assume certain debts and obligations of the plaintiffs.

Economou Farms, Inc. was incorporated in March, 1955. The money, however, was never paid to Nicholas; the shares of stock were not issued; and Nicholas's properties were not transferred to Economou Farms, Inc. Nonetheless, after its incorporation, Economou Farms, Inc. operated the farms. And it formally acquired the properties after a series of transactions during the next five years. In May, 1955, Nicholas assigned his interest in the Wortheim land to it. Then, in 1958, after foreclosure proceedings were instituted against the Lavoie property, that real estate was transferred to Economou Farms, Inc. And it obtained the Brileya property by warranty deed in 1960, in conjunction with the exchange of mutual releases among the parties.

During the last half of the 1950s, Economou Farms, Inc. operated at a loss. Although the planning had called for Nicholas to serve as manager, experienced farm hands twice ran the farms during that period. In time, Nicholas and his wife, Lorraine, became unhappy with the arrangement. Their dissatisfaction eventually led them to consult an attorney. In 1960, they brought an action against Costas, C. Economou Cheese Corporation, and Economou Farms, Inc.

In that action, the plaintiffs sought the following: payment of monies claimed to be due Nicholas from the C. Economou Cheese Corporation from 1947 through 1950; the issuance of 50% of the capital stock of Economou Farms, Inc. to Nicholas; the termination of Economou Farms, Inc. and C. Economou Cheese Corporation and the distribution of their assets; an accounting by Economou Farms, Inc., C. Economou Cheese Corporation and Costas; payment to Economou Farms, Inc. of the balance of $50,000.00 credit by C. Economou Cheese Corporation to Economou Farms, Inc.; and the cancellation of a $10,000.00 promissory note and of a release, both executed by Nicholas in January, 1955. The prayer for relief did not request a rescission of the transactions for the Shoreham and South Burlington properties.

The litigation engendered extensive negotiations between the parties. Each was represented by an attorney. The talks resulted in the exchange of mutual releases on April 30, 1960, and the suit was discontinued.

Approximately eleven years later, the plaintiffs brought the action now before us asserting claims to wages and profits and to the lands conveyed. In their complaint as amended, they sought to have the court apply the equitable doctrines of rescission and reformation so as to obtain the return of the Brileya, Lavoie and Wortheim real estate, which had previously been conveyed to Economou Farms, Inc. The defendants denied the claims of the plaintiffs and in their answer set up the affirmative defenses of release and of accord and satisfaction. The plaintiffs admitted that the releases were voluntarily executed but claimed that the 1960 release did not encompass the retention of the farms by the corporation.

Upon conflicting evidence, the trial court found and concluded that the release of April 30, 1960, discharged all claims that existed between the parties prior to its execution, including any right the plaintiffs may have claimed or may have had to all real and personal property conveyed to Economou Farms, Inc. The plaintiffs' prayer for rescission was denied on the ground that the releases were supported by sufficient consideration and that the consideration had not been returned. Reformation was not granted due to the plaintiffs' failure to sustain their burden of proof. The court further concluded that any and all claims made by the plaintiffs were barred by accord and satisfaction.

On appeal the appellants raise, in essence, two principal issues for our consideration. First, they seek a new trial, claiming that they have evidence of fraudulent endorsements on certain checks and documents introduced into evidence below. In support of their claim, they have submitted the opinion of a handwriting expert, who was consulted after judgment was entered. The appellants also contend that the evidence does not support the trial court's findings of fact and the findings in turn do not support the court's conclusions and judgment.

The claim of fraud was raised but not proved in the superior court. However, the particular allegation of fraud that is now raised was not presented in the superior court. As that issue is now raised for the first time, we cannot consider it. *Kuhn* v. *Department of Employment Security*, 134 Vt. 292,

293, 357 A.2d 534, 535 (1976) ; *LaFountain* v. *Vermont Employment Security Board,* 133 Vt. 42, 48, 330 A.2d 468, 472 (1974).

The appellants have not made any challenge to specific findings, and ordinarily we do not search the record for error. See *Capital Candy Co.* v. *Savard,* 135 Vt. 9, 12, 369 A.2d 1361, 1363 (1976). However, in view of the appellants' pro se argument, we have examined it.

■ In our scrutiny of the record, we are guided by two longstanding principles. First, it is axiomatic in appellate procedure that the findings of fact will not be set aside unless clearly erroneous. V.R.C.P. 52; *Fin* v. *Middlebury College,* 136 Vt. 543, 544, 394 A.2d 1152, 1153 (1978); *Monti* v. *Town of Northfield,* 135 Vt. 97, 100, 369 A.2d 1373, 1376 (1977). The findings must stand if there is reasonable and credible evidence to support them. *Fin* v. *Middlebury College, supra,* 136 Vt. at 544, 394 A.2d at 1153; *Carbonneau* v. *Lague, Inc.,* 134 Vt. 175, 177, 352 A.2d 694, 696 (1976).

■ A second principle, which in a sense underlies the first, is that the trial judge is given the sole determination of the weight of the testimony. *Capital Candy Co.* v. *Savard, supra,* 135 Vt. at 12, 369 A.2d at 1362. Because it is in the best position to observe the credibility of the witnesses, the resolution of conflicting testimony is for the trial court. *Baker* v. *FitzGerald,* 134 Vt. 259, 356 A.2d 220 (1976).

Although the testimony was conflicting, the trial court made its findings only after lengthy and patient consideration of the matter. It heard eleven days of testimony and filed ninety-nine findings of fact, upon which it based its conclusions of law and judgment order denying relief to the plaintiffs and dismissing the defendants' counterclaim. We have reviewed the record in depth, and we find no error in the court's determination. The evidence supports its findings.

The findings reveal that the 1960 action involved all but one of the claims presented in this litigation. (The plaintiffs have added a demand for the return of the real estate conveyed to Economou Farms, Inc.) In an attempt to settle that action,

counsel, with the knowledge and consent of all parties, discussed at length the claims of each party. Although the real estate conveyances were not attacked in the litigation, the trial court found that the plaintiffs' interests in the properties were included in the negotiations for the release. The talks also covered the employment of Nicholas by C. Economou Cheese Corporation. The plaintiffs were made aware of every facet of the discussions.

At the time of the 1960 litigation, the Lavoie and the Wortheim properties stood in the name of Economou Farms, Inc. The fifty thousand dollar payment to the plaintiffs for those farms had not been made; however, the defendants had put in over one hundred thousand dollars into Economou Farms, Inc. The plaintiffs had not received their half share of the corporation's stock, but the trial court found that the plaintiffs then held an equitable interest in it. There had been no corporate profits to that time. The defendants had paid certain loans and obligations of the plaintiffs as previously agreed.

As a result of the negotiations, the parties executed general mutual releases. The plaintiffs gave the defendants a general release, discharging them from all claims of any kind or nature which the plaintiffs might have against them. The release also contained specific language releasing C. Economou Cheese Corporation from any claims by Nicholas under a verbal contract of employment. As the court found from competent evidence, the execution of the release by the plaintiffs was a voluntary act supported by consideration. In return, the defendants gave the plaintiffs a general release of any and all claims they might have.

In conjunction with the exchange of releases and as part of the settlement of the 1960 action, the plaintiffs received from the defendants a note in the sum of $42,300.00. An additional check of $2,300.00 was also given to an agent for the plaintiffs. At the same time, Nicholas received and endorsed a check for $200.00 for all of his outstanding common stock in Economou Farms, Inc., thereby selling his interest in that corporation. The plaintiffs in turn conveyed the Brileya property to Economou Farms, Inc. and departed from the house on the Wortheim property, in which they had lived while Nicholas served as manager.

■■ A release is a contract. *Caledonia Sand .& Gravel Co.* v. *Joseph A. Bass Co.*, 121 Vt. 161, 165, 151 A.2d 312, 315 (1959). A valid release is a bar to recovery on the claim released, so long as it is not rescinded by an offer to return the consideration insofar as it lies within the power of the person who has executed the release. *Id.; Brainard* v. *Van Dyke*, 71 Vt. 359, 362–63, 45 A. 758, 759 (1899).

■■ The scope of a release is determined by the intention of the parties as expressed in the terms of a particular instrument considered in the light of all facts and circumstances. *Bilotti* v. *Accurate Forming Corp.*, 39 N.J. 184, 203–04, 188 A.2d 24, 35 (1963). In interpreting a release to determine whether a particular claim has been discharged, the primary rule of construction is that this intention is to be determined by a consideration of what was within the contemplation of the parties when the release was executed, which in turn is to be resolved in the light of the surrounding facts and circumstances under which the parties acted. 66 Am. Jur. 2d *Release* § 30.

■ The court found that the release and discharge of the real estate in question was within the contemplation of the parties. The evidence supports its determination. In order to avoid the effect of the 1960 release, the plaintiffs must show that to enforce it would be " 'cruel or shocking to the average man's conception of justice' . . . or 'injurious to the public or against the public good.' " *Dutch Hill Inn, Inc.* v. *Patten*, 131 Vt. 187, 192, 303 A.2d 811, 814 (1973). The evidence in the case before us is to the contrary.

■ In their pleadings the plaintiffs alleged that the transfers of the properties to Economou Farms, Inc. and the execution of the release were induced by deceit and misrepresentation. They bore the burden of proof upon this issue. Fraud is not to be presumed, it must be proved. *Dutch Hill Inn, Inc.* v. *Patten, supra,* 131 Vt. at 195, 303 A.2d at 816. The court did not find this element of the plaintiffs' case. Its failure to find fraud is the equivalent of an affirmative finding against the plaintiffs. See *Neverett* v. *Towne,* 121 Vt. 447, 456, 159 A.2d 345, 350 (1960).

We turn now to the plaintiffs' prayer for rescission. In order to rescind a contract, the party seeking rescission must act affirmatively to restore both parties to their condition before the contract. *Smith* v. *Munro*, 134 Vt. 417, 420, 365 A.2d 259, 262 (1976). When one has received anything of value in settlement of a right of action, and he desires to rescind, he must return the consideration received insofar as it lies within his power to do so. Absent such an offer, the contract of settlement is a bar to recovery at law. *Caledonia Sand & Gravel Co.* v. *Joseph A. Bass Co.*, *supra*, 121 Vt. at 165, 151 A.2d at 314–15. The trial court found that the plaintiffs had made no offer to return the consideration which they had received, and accordingly barred their claim of rescission.

The basis for the plaintiffs' prayer for reformation of the 1960 release and of the deeds transferring the real and personal property to Economou Farms, Inc., is their claim that the 1955 agreement was for the formation of a partnership and not a corporation, as found by the court. For them to prevail, it was incumbent that they produce evidence sufficient to establish beyond a reasonable doubt that there existed a valid agreement representing a standard to which the erroneous writings could be reformed so as to express the true transaction of the parties. *Kilcullen* v. *Dery*, 133 Vt. 140, 142, 334 A.2d 410, 411–12 (1975); *LaRock* v. *Hill*, 131 Vt. 528, 530, 310 A.2d 124, 126 (1973). The trial court noted that the plaintiffs failed to establish, beyond a reasonable doubt, the existence of such a standard. Absent a showing by the plaintiffs that their version of the transactions should have been adopted by the trial court as a matter of law, we will not disturb the court's order and judgment. *Brown* v. *Cassella*, 135 Vt. 62, 64, 370 A.2d 188, 189 (1977).

Our review of the ninety-nine findings of fact and of the conclusions of law filed by the trial court after eleven days of trial convinces us that the court, with great patience and judicial integrity, carefully weighed all of the voluminous testimony and exhibits. The court responded to each of the specific claims for relief set forth in the petition. The evidence supports its findings of fact, conclusions of law, and the judgment in

favor of the defendants. The injunction contained in the judgment order, also being correct in fact and law, will stand. The release of attachments specified in the judgment order is also confirmed.

*The judgment is affirmed in all aspects, including the order for injunction. Upon certification of this decision, the attachments are dissolved pursuant to the provisions of V.R.C.P. 62(f).*