## George W. Smith v. Bonnie Gainer

[571 A.2d 70]

No. 88-628

Present: Allen, C.J., Peck, Gibson and Dooley, JJ.

Opinion Filed January 5, 1990

*Christopher P. Sullivan* and *Lamar Enzor* of *Sullivan &
Sullivan,* Rutland, for Plaintiff-Appellant.

*Robert B. Luce* of *Downs Rachlin & Martin,* Burlington, for
Defendant-Appellee.

**Dooley, J.** Plaintiff, George Smith, appeals from a decision of
the Rutland Superior Court granting the directed verdict mo-
tion of defendant, Bonnie Gainer, in a motor vehicle accident
case. At the close of the plaintiff's case, the trial court con-
cluded that the evidence, taken in a light most favorable to the
plaintiff, did not support a finding that defendant was negligent.
The court rejected an alternative ground for the motion that a
release given in connection with defendant's claim against
plaintiff barred the action. We affirm the decision with respect
to the release but reverse the grant of the directed verdict and
remand for a new trial.

The accident occurred on Route 4 in the City of Rutland
where Post Road enters from the north. Plaintiff and his family
proceeded south along Post Road and stopped at a sign which is
located approximately forty (40) feet from the line that marks
the end of Post Road as it "tees" into Route 4. The ability of the
operator stopped at that sign to observe traffic on Route 4 is
limited. In order to observe the traffic on Route 4 properly, the
operator must stop again at the end or "fog" line before enter-
ing the Route 4 intersection.

There was some dispute in the evidence on whether plaintiff
also stopped at the "fog" line and looked to the left before en-
tering Route 4. Plaintiff's son, who was a passenger in the back
seat of plaintiff's vehicle, testified that plaintiff stopped at a
point where he had a clear view up Route 4 to the east and he
looked at that time. The son further testified that he also looked
at that time and saw no vehicle approaching on Route 4 from an
easterly direction. Plaintiff entered the intersection and turned
left to proceed easterly on Route 4. In doing so, he crossed the
westbound lane of travel of this two-lane highway.

Defendant was proceeding westerly on Route 4. She testified that her speed was well below the posted limit. When plaintiff's vehicle entered in front of her, she applied her brakes and swerved to the left, crossing the center line. The point of impact was in the east-bound lane of travel—that is, plaintiff's lane of travel. At the time of impact, plaintiff's vehicle was in the east-bound lane with six inches of the vehicle overhanging the double yellow line at the center of the highway.

Plaintiff's evidence consisted of the testimony of himself and two occupants of the vehicle, the defendant and an accident reconstruction expert. The expert gave the opinion that the accident was caused by the defendant's failure to continue proceeding within her lane of travel when plaintiff crossed in front of her and by a malfunction in defendant's brakes that caused her vehicle to swerve to the left. The expert testified that the accident would not have happened if defendant had kept going straight in her lane of travel and had braked normally.

In response to defendant's motion, the trial court granted a directed verdict because plaintiff was negligent in entering the intersection without stopping at the "fog" line and looking to the left, and this negligence caused the accident. The court rejected the expert's opinions of the cause of the accident as "bare, naked opinion."

■ ■ In passing on the propriety of a directed verdict granted under V.R.C.P. 50(a), we must view the evidence in the light most favorable to the nonmoving party, excluding any modifying evidence. *Senesac v. Associates in Obstetrics & Gynecology*, 141 Vt. 310, 312, 449 A.2d 900, 902 (1982). The directed verdict may be granted only if there is no "evidence fairly and reasonably supporting plaintiff's claim." *Id.* We find such evidence in this case.

■ The trial court focused first on plaintiff's negligence, holding that plaintiff was negligent as a matter of law. Plaintiff had a duty to maintain a proper lookout for persons on the highway and to use reasonable diligence to avoid injuries to others. See *Scrizzi v. Baraw*, 127 Vt. 315, 318, 248 A.2d 725, 727–28 (1968). He is charged with the knowledge of objects that are in plain view in the road. See *id.* at 319, 248 A.2d at 728. Plaintiff

446

also had a statutory duty to stop at a point where he had "a view of approaching traffic on the intersecting roadway before entering the intersection" and to yield to any vehicle "approaching so closely on said highway as to constitute an immediate hazard . . . ." 23 V.S.A. § 1048(b). Violation of this safety standard "makes out a prima facie case of negligence" subject, of course, to plaintiff's right to rebut this presumption of negligence. *Heath v. Orlandi*, 127 Vt. 204, 206, 243 A.2d 792, 794 (1968).

■■ We do not believe that the evidence was so clear that the court could find that plaintiff was negligent as a matter of law and that this negligence was the sole cause of the accident. The son's evidence was sufficient to raise a jury question of whether plaintiff was negligent and the cause of the accident. Even if we conclude that plaintiff was negligent as a matter of law, "contributory negligence [does] . . . not bar recovery in an action" to recover damages for negligence. 12 V.S.A. § 1036. The plaintiff's negligence must be compared with that of the defendant, if any. The son's evidence minimized the extent of the plaintiff's negligence and suggested other causes. Since, as noted below, there was sufficient evidence from which the jury could conclude defendant was negligent, the comparison of the negligence of the plaintiff and the defendant was for the jury.

■ The trial court also found that defendant was not negligent. A number of standards applied to defendant's conduct as an operator. She had a duty to stay to the right of the center of the highway to permit passing without interference. See 23 V.S.A. §§ 1031–1032; *Heath v. Orlandi*, 127 Vt. at 206, 243 A.2d at 794. She had the duty to have her vehicle under reasonable and proper control at all times. See *George v. Graham*, 151 Vt. 527, 529, 561 A.2d 1361, 1362 (1989). Even though defendant approached the intersection along the favored route, she was still obliged to enter "slowly, with due care to avoid accidents." 23 V.S.A. § 1046(c)(3). See *Verchereau v. Jameson*, 122 Vt. 189, 197, 167 A.2d 521, 527 (1961).

■ We cannot find that there was no evidence supporting the claim that defendant was negligent in this case, especially in light of the expert testimony and the fact that the accident occurred in plaintiff's lane of travel. Nor can we accept the court's

determination that the expert's opinion could be discounted because its basis was inadequate. There is no question that there was an adequate foundation to admit the testimony. See V.R.E. 702. The bases for the opinion were fully explored in both direct and cross-examination. See V.R.E. 703, 705. The probative weight of the expert opinion was for the trier of facts—here, the jury—to evaluate. See Reporter's Notes to V.R.E. 702. It was error for the trial court to substitute its own view of that weight to grant the directed verdict motion.

The second issue involves a release signed by defendant and her husband, releasing their claims against plaintiff in this case. The release is dated March 21, 1985 and was given in consideration of the payment of approximately $8,000 as a settlement of defendant's claims against plaintiff for damages arising out of the accident involved in this case. The release states that it is "the ENTIRE AGREEMENT between the parties" and it is signed solely by the defendant and her husband; plaintiff did not sign the release.

After filing an amended answer pleading the affirmative defenses of estoppel, waiver, accord and satisfaction, and release, defendant moved for summary judgment based on defendant's affidavit stating that she had signed both the release and a copy of the release. Defendant argued that plaintiff's acceptance of the release without a reservation of rights constituted a complete accord and satisfaction of all claims of the parties to the settlement arising out of the same accident.

The trial court denied the summary judgment motion on the ground that releases are interpreted and enforced according to the intentions of the parties and this release showed no intent to discharge defendant's liability to plaintiff. The defendant raised the issue again at trial as an additional ground for a directed verdict although no additional evidence was introduced bearing on the meaning or effect of the release. The trial court rejected this ground for the directed verdict, relying on the earlier summary judgment decision. Defendant argues in this Court that the trial court decision entering judgment for defendant can be affirmed on the release issue even though the trial court rejected this ground.

As defendant argues, a number of courts have held that a party who obtains a release from another party in return for paying money to settle any claims that the second party may have arising out of an accident is barred from bringing an action against that second party for damages absent a reservation of rights. See, e.g., *Lugena v. Hanna*, 420 S.W.2d 335, 340–41 (Mo. 1967); *Burke v. Shaffer*, 184 Neb. 100, 102, 165 N.W.2d 352, 353 (1969); *Harrison v. Lucero*, 86 N.M. 581, 583–84, 525 P.2d 941, 944 (Ct. App. 1974). Under these holdings, it is not determinative that the release is not signed by the party now suing and that it never mentions the recipient's right to sue. Although the precise grounds for the decisions differ somewhat, they are all based on concepts of estoppel and public policy. Thus, the court in *Harrison v. Lucero* noted:

> We are not dealing with the interpretation of the language of the release nor the intention of the parties as expressed therein, because in all probability the parties did not consider the question of whether the release given by Lucero to Harrison would bar future legal action by Harrison against Lucero. On the basis of public policy we therefore conclude that the release given by Lucero to James Harrison without an express reservation of the right to make a claim against Lucero constitutes an accord and satisfaction of all claims between them arising out of the accident and James Harrison is estopped from proceeding against Lucero . . . .

86 N.M. at 584, 525 P.2d at 944. Although the cases are based on estoppel principles, they recognize that an express reservation of the right to sue in the release will prevent the bar. *Burke v. Shaffer*, 184 Neb. at 102, 165 N.W.2d at 353 ("It is the absence of a reservation of rights that now bars the plaintiff's action . . . .").

We have not had occasion to consider this estoppel and public policy issue. As the trial court held, our law is clear that "[t]he scope of a release is determined by the intention of the parties as expressed in the terms of a particular instrument considered in the light of all facts and circumstances." *Economou v. Economou*, 136 Vt. 611, 619, 399 A.2d 496, 500 (1979). Thus, in looking at the release, we are most concerned with

"what was within the contemplation of the parties when the release was executed." *Id.*

In reviewing decisions from other states, we are most persuaded by the opinions from the Supreme Judicial Court of Maine. In *Butters v. Kane*, 347 A.2d 602, 604 (Me. 1975), the court adopted the rule that the making of the original settlement without any express reservation of rights by the settlor constitutes a complete accord and satisfaction of all claims of the immediate parties to the settlement arising out of the same accident. Thereafter, in *Brown v. Manchester*, 384 A.2d 449 (Me. 1978), the court confronted a case where the plaintiff had obtained a release from defendant in return for a settlement, but the transaction was negotiated entirely by plaintiff's insurance carrier without plaintiff's involvement. The court held that the *Butters* rule applied only to immediate parties and that the plaintiff was not an immediate party to the release unless the insurer was authorized to settle the claim of the plaintiff-insured against the party signing the release. *Id.* at 453. It reversed a summary judgment for defendant for fact-finding on the involvement of plaintiff in the settlement and release even though plaintiff never brought forward the facts relating to the issue in response to the original motion. The court held that a disputed issue of material fact was present because defendant failed to show plaintiff's involvement in the negotiation or execution of the release so that it was clear that plaintiff was an "immediate party" to the release. *Id.* at 453–54.

A recent decision of the Maine court noted that the *Butters* rule is based on the court's conclusion that "implicit in the bargain of accord and satisfaction is a reciprocal release, by the party who has procured the express release, of any claims inconsistent with the settlement effected by the release." *Cyr v. Cyr*, 560 A.2d 1083, 1084 (Me. 1989). The court went on to add: "Undoubtedly, there will be cases involving circumstances presenting a dispute of material fact as to the scope of the implied discharge given by the releasee." *Id.*

██ ██  The decision to deny summary judgment in the instant case was correct, at least for the reasons set forth in *Brown v. Manchester.* In order to obtain summary judgment,

the moving party must show the absence of a controverted material fact before the opposing party must come forward to rebut. *Alpstetten Assoc. v. Kelly*, 137 Vt. 508, 514–15, 408 A.2d 644, 647 (1979). Here, defendant showed the release but presented no facts bearing on plaintiff's involvement in it. While nothing in the facts tells us that the settlement amount was paid by an insurance company, it is unlikely that an $8,000 settlement was made a few months after an automobile accident without involving insurance. In any event, as *Brown v. Manchester* holds, it was clearly defendant's burden to show plaintiff's direct involvement. 384 A.2d at 453.

While we affirm the denial of summary judgment, and the denial of a directed verdict on the release issue, on a narrow ground, we expressly decline to state how far we will go in recognizing an estoppel, implied release, accord and satisfaction, or the like as a bar against a plaintiff who has not signed the express release. We note that the doctrine evolved in other states before the widespread adoption of comparative negligence. When contributory negligence was a bar to liability, a plaintiff who had made a monetary settlement with another person in return for a release was clearly acting inconsistently in suing that other person for negligence in the same accident. Now it is more debateable whether the plaintiff's actions are inconsistent. At least for this reason, we believe it is important in cases such as this that the circumstances surrounding the execution of the release be fully explored before any decision is made about its legal effect as to the nonsigning party.

*Reversed and remanded.*