VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org



Case No.     25-AP-190

*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant. Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

NOVEMBER TERM,   2025

| | |
|---|---|
| Robert Hill\* and Diane Hill\* v. RuralEdge et al. | APPEALED FROM:<br><br>Superior Court, Caledonia Unit,<br>Civil Division<br>CASE NO. 24-CV-00844<br>Trial Judge: Benjamin Battles |

In the above-entitled cause, the Clerk will enter:

Plaintiffs Robert and Diane Hill appeal the dismissal of their claims against defendants Gilman Housing Trust, Inc., d/b/a RuralEdge and its subsidiary, Northeast Community Lending Corporation (NCLC). We affirm.

The following facts are drawn from plaintiffs' amended complaint and associated documents. See Sutton v. Purzycki, 2022 VT 56, ¶ 20, 217 Vt. 326 (explaining "[i]n addition to the contents of a complaint, documents relied on in a complaint merge into the pleadings" such that court may take notice of such documents in deciding motion to dismiss). Plaintiffs obtained funding from RuralEdge and a home equity loan from NCLC to replace the roof of their home. RuralEdge referred plaintiffs to three roofing contractors, including ACT Roofing, LLC, which was operated by Adam Patten. Plaintiffs signed a "Rehab Construction Agreement" with ACT. The agreement defined ACT as the "contractor" and plaintiffs as the "homeowner." The first page of the agreement stated:

> The Contractor has been hired by the Homeowner to make the repairs outlined in the Scope of Work attached. The Homeowner and Contractor agree that, while RuralEdge is not a party to this agreement, RuralEdge will be representing the Homeowner's interests to ensure that the project is satisfactorily completed in accordance with the Scope of Work and the cost agreed to in advance by all parties as well as ensuring adherence to the requirements set forth by our funding partners.
>
> RuralEdge is not responsible for choosing the contactor and provides no guarantee for the work performed by the above-named contractor. The contractor is responsible for the quality, performance, and timeliness of their work.

The last page of the agreement provided:

> By signing this agreement both the Homeowner and the Contractor agree to release and hold harmless Gilman Housing Trust, Inc. dba RuralEdge, its employees, members, officers, and state and local agencies in connection with their actions reasonably associated with the funding of this project, property inspections, consultation, technical advice, financial consultation, loan processing; and any defects in the construction work performed as part of this project.

The agreement was signed by plaintiffs and Patten. Below their signatures, the agreement stated, "The signing of this agreement between the Homeowner and the Contractor has been witnessed by RuralEdge. RuralEdge accepts its appointment as the Homeowner's agent and on behalf of the homeowner, authorizes the Contractor to begin work as specified by this agreement." A representative of RuralEdge signed below this provision.

ACT began work on plaintiffs' home, but did not complete the project. ACT damaged several chimneys, siding, trim, and landscaping; left a five-gallon bucket of nails scattered in the driveway; and dropped a lightning rod cable on an electric power line. ACT then walked off the job, leaving an unfinished and defective roof that was exposed to the elements. ACT refused to install tarps or otherwise protect the home. Plaintiffs' home was damaged as a result.

Plaintiffs alleged that RuralEdge "failed to verify [ACT's] credentials and insurance coverage as agreed," "refused to provide plaintiff[s] and insurance carrier with file photos taken by plaintiff[s'] contractor for inappropriate installation of partial roof completed," "repeatedly denied that the contractor had no insurance coverage and would not provide a copy of the certificate of liability insurance on file at RuralEdge to the plaintiffs until mid-July," "hired an attorney to protect the contractor, their own interests as well as anyone affiliated with [RuralEdge] and refused to communicate with plaintiffs as agreed," and "aided and protected [ACT] after it was exposed."

Plaintiffs sued RuralEdge in March 2024. Following a status conference in August 2024, plaintiffs amended their complaint to add NCLC, ACT, and Patten as defendants. RuralEdge and NCLC separately moved to dismiss the actions against them for failure to state a claim.

In November 2024, the civil division granted the motions. The court held that plaintiffs' claims against RuralEdge were barred by the release contained in the agreement, and that to the extent they claimed RuralEdge engaged in fraud, they had failed to allege specific facts to support such a claim. The court further held that plaintiffs made no specific allegations of wrongdoing by NCLC, which did not sign the construction agreement, and had not alleged facts sufficient to hold NCLC liable for RuralEdge's acts or omissions.

In April 2025, the court held a bench trial on plaintiffs' claims against ACT and Patten, following which it entered judgment against ACT and Patten for $30,000. This appeal followed.

Plaintiffs challenge the dismissal of their claims against RuralEdge and NCLC. We review a decision granting a motion to dismiss de novo, using the same standard as the trial court. Birchwood Land Co. v. Krizan, 2015 VT 37, ¶ 6, 198 Vt. 420. We "will uphold a motion to dismiss for failure to state a claim only if it is beyond doubt that there exist no facts or circumstances that would entitle the plaintiff to relief." Id. (quotation omitted).

Plaintiffs argue that defendants were contractually obligated to confirm ACT's credentials and insurance coverage but failed to do so. They appear to argue that the civil division erred in construing the release to protect RuralEdge from liability for its alleged breach of the parties' agreement.

We have held that "[a] release is a contract," and "[a] valid release is a bar to recovery on the claim released." Economou v. Economou, 136 Vt. 611, 619 (1979). "The scope of a release is determined by the intention of the parties as expressed in the terms of a particular instrument considered in the light of all facts and circumstances." Id. "When the language of a release is clear, we presume it reflects that intent." Scott v. State, 2021 VT 39, ¶ 12, 214 Vt. 616. "Releases must be specific in order to be valid and are interpreted narrowly, as a general matter." N. Sec. Ins. Co. v. Mitec Elecs., Ltd., 2008 VT 96, ¶ 20, 184 Vt. 303.

By signing the agreement, plaintiffs agreed "to release and hold harmless" RuralEdge and its employees "in connection with their actions reasonably associated with the funding of this project, property inspections, consultation, technical advice, financial consultation, loan processing; and any defects in the construction work performed as part of this project." This language is unambiguous and is clearly intended to bar all claims arising from actions by RuralEdge that were "reasonably associated with" funding or consulting on the roofing project and ACT's defective work. The release is broad enough to cover RuralEdge's alleged failure to verify ACT's insurance coverage or credentials. Because the language is clear, we need not look further to determine its intent; thus, defendants' alleged representations to plaintiffs prior to the agreement, and the other documents cited by plaintiffs, are beyond the scope of our review. See Scott, 2021 VT 39, ¶ 20 (explaining that court may not consider extrinsic evidence where release language is unambiguous). We note, however, that the release language is consistent with other provisions in the agreement stating that RuralEdge is not responsible for choosing the contractor or the contractor's performance.

Plaintiffs do not challenge the court's conclusions that they failed to allege sufficient facts to support a fraud claim against RuralEdge or to hold NCLC liable, either directly or because it was RuralEdge's corporate subsidiary. Accordingly, there is no basis to disturb the decision below.

Affirmed.

BY THE COURT:

Harold E. Eaton, Jr., Associate Justice

William D. Cohen, Associate Justice

Nancy J. Waples, Associate Justice